In re David J. DeMARCO and Mary Ann DeMarco, Debtors.

KingVision Pay Per View, Ltd., A Delaware corporation, Plaintiff,

v.

Mary Ann DeMarco, Defendant.

Bankruptcy No. 99 B 6807.
Adversary No. 99 A 437.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Oct. 27, 1999.

Jeffrey R. Platt, Law Offices of Jeffrey R. Platt, Chicago, IL, for Movant or Plaintiff.

Mark D. Weisman, Chicago, IL, for Respondent or Defendant.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the motion of Mary Ann DeMarco ("Defen-

dant" or "DeMarco") to dismiss the amended adversary complaint of KingVision Pay Per View, Ltd. ("Plaintiff" or "KingVision"). For the reasons set forth herein, the motion of the Defendant to dismiss Plaintiff's amended adversary complaint is granted and Plaintiff's first claim for relief, brought under 11 U.S.C. § 523(a)(2)(a), is dismissed with prejudice. Plaintiff's second claim for relief, brought under 11 U.S.C. § 523(a)(6), is stricken with leave to file a second amended adversary complaint as to 11 U.S.C. § 523(a)(6) only.

## BACKGROUND

This is a dispute over the dischargeability of a claim for damages for alleged violations of the Cable Communications Policy Act of 1984. Plaintiff alleges that the debt should be held nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (6).[1]

On June 28, 1997, KingVision Pay Per View, Ltd. broadcast the encoded, closed-circuit telecast of the Professional Prizefight between Evander Holyfield and Mike Tyson, a telecast to which KingVision owned exclusive commercial exhibition and distribution rights. Plaintiff alleges that, on that evening, Defendant impermissibly intercepted, decoded, received, and exhibited the broadcast of the fight at the commercial establishment which she owned and operated.

On October 30, 1998, KingVision filed a complaint against both Mary Ann DeMarco in her individual capacity and Spectators Sports Bar, Inc. ("SSB"), a corporation wholly owned by DeMarco, alleging violations of both Section 553 and Section 605 of the Cable Communications Policy Act of 1984 (47 U.S.C. §§ 553 and 605 as amended). On March 3, 1999, DeMarco filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Shortly thereafter, pursuant to the automatic stay, DeMarco received a dismissal without prejudice in the District Court liti-

---

**1.** Unless otherwise indicated, references to Rules are to the Federal Rules of Bankruptcy Procedure and all statutory references are to Title 11 of the United States Code.

gation and KingVision later obtained a default judgment against SSB, Inc.

On April 6, 1999, KingVision filed an adversary complaint objecting to the dischargeability of the alleged debt arising from violations of the Cable Communications Policy Act. On May 3, 1999, Mary Ann DeMarco filed a motion to dismiss KingVision's complaint alleging nondischargeability. On June 10, KingVision filed an amended adversary complaint seeking a finding of nondischargeability of the claim. On June 16, 1999, Mary Ann DeMarco filed the present motion to dismiss KingVision's amended adversary complaint.

KingVision, in its amended complaint, claims that DeMarco's intercepting and misappropriating of KingVision's broadcast of the fight constitutes both fraud and a willful and malicious injury by DeMarco against KingVision. KingVision asserts that a finding of nondischargeability is proper, pursuant to §§ 523(a)(2) and (6), respectively.

DeMarco contends that KingVision's complaint should be dismissed for the following reasons: (1) the alleged conduct by DeMarco does not constitute fraud; (2) KingVision has failed to sufficiently plead the issue of fraud in accordance with the particularized pleading requirements for averments of fraud under Fed.R.Civ.P. 9(b) and Fed. R. Bankr.P. 7009; (3) KingVision has not pled with sufficient particularity that DeMarco's actions constituted a willful and malicious injury; and (4) the dismissal of Mary Ann DeMarco in District Court litigation between KingVision and DeMarco and SSB should, on grounds of collateral estoppel, prevent the filing of this amended complaint seeking a determination of non-dischargeability.

## APPLICABLE STANDARDS

For a defendant to prevail on a motion to dismiss, it must appear from the complaint that the plaintiff can prove no set of facts which could entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Further, in considering a defendant's motion to dismiss, the Court must assume the truth of all well-pleaded factual allegations and make all possible inferences in favor of the plaintiff. *Gorski v. Troy,* 929 F.2d 1183, 1186 (7th Cir.1991). For a motion to dismiss, the ultimate issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff has pleaded a cause of action sufficient to entitle it to go forward with the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Generally, federal notice pleading standards require only that the plaintiff give the defendant fair notice of its claims and the grounds for those claims. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), *Conley,* 355 U.S. at 47, 78 S.Ct. 99. However, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir. 1992), *cert. denied,* 506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992), *In re Handy Andy Home Improvment Ctrs., Inc.,* 1997 WL 268354 at *2 (Bankr.N.D.Ill.1997) (Katz, J.). Mere conclusory allegations unsupported by factual assertions will not withstand a motion to dismiss. *Briscoe v. LaHue,* 663 F.2d 713 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), *cert. denied sub nom. Talley v. Crosson,* 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983).

As a matter of federal law, a complaint alleging fraud is subject to a heightened pleading standard. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Bankruptcy Rule 7009 incorporates Fed.R.Civ.P. 9(b) into bankruptcy proceedings, and the Seventh Circuit has held that the heightened pleading requirements of Fed.R.Civ.P. 9(b) require that a plaintiff state

the "who, what, when, and where of the alleged fraud." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

## DISCUSSION

KingVision asserts two claims for relief seeking determinations of nondischargeability under § 523. First, KingVision alleges the debt is nondischargeable under § 523(a)(2)(A) which exempts from discharge a debt for money, property, or services to the extent obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). KingVision next alleges that the debt should be held nondischargeable under § 523(a)(6). § 523(a)(6) allows a finding of nondischargeability for any debt, "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

■ Generally, one of the central purposes of the bankruptcy system is to provide debtors the opportunity to obtain a "fresh start." To provide an "honest but unfortunate debtor" with a fresh start, courts will construe exceptions to discharge strictly against a creditor and liberally in favor of the debtor. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) *citing Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985). Therefore, only those debts arising from circumstances expressly listed in § 523 may be found nondischargeable and the court is generally without power to extend nondischargeability further. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998).

KINGVISION'S FIRST CLAIM FOR RELIEF—NON-DISCHARGEABILITY UNDER § 523(A)(2)(A).

KingVision alleges that § 523(a)(2) warrants nondischargeability in the present case because the alleged debt arose from money, property, or services which were obtained by DeMarco's false representa-

tions, false pretenses, or actual fraud. While KingVision does not state which of the three types of actions covered by § 523(a)(2)(A) has taken place, the Seventh Circuit held that a single standard shall apply for all claims of nondischargeability under § 523(a)(2)(A), regardless of whether the claims involve false pretenses, actual fraud or false misrepresentations, despite the fact that the elements of each were different under common law. *Mayer v. Spanel Internat'l Ltd.*, 51 F.3d 670, 674 (7th Cir.1995). *See also AT & T Universal Card Services v. Alvi, (In re Alvi)*, 191 B.R. 724, 728, 28 Bankr.Ct. Dec. (CRR) 641, Bankr.L. Rep. (CCH) ¶ 76,913 (Bankr. N.D.Ill.1996).

■ To obtain a finding of nondischargeability under § 523(a)(2)(A), the Plaintiff must allege and prove that: (1) the debtor owes him a debt; (2) the debt is for money, property, or services; (3) the debtor obtained the money, property or services by making representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation; (4) the debtor acted with scienter, or an intent to deceive; and (5) the Plaintiff justifiably relied on the debtor's false statement to its detriment. *Zirkel v. Tomlinson (In re Tomlinson)*, 1999 WL 294879, at *7, *citing Goldberg Securities, Inc., v. Scarlata (In re Scarlata)*, 979 F.2d 521, 525 (7th Cir.1992), *Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

■ Here, accepting all of KingVision's allegations as true, the pleadings may be sufficient to allow KingVision to meet requirements (1) and (2). Plaintiff has not, however, sufficiently alleged the latter three. Plaintiff has not alleged any misrepresentation or reliance at all. Stating that only the Defendant knows how she obtained the broadcast for SSB, KingVision, in its response to DeMarco's motion, makes several guesses as to what actually happened. Plaintiff suggests that either

Defendant misrepresented to the local cable or satellite company that it was a residential entity, or that it ordered the fight at a residence and subsequently either brought the cable decoder into the commercial establishment or used a cable to connect the decoder to the commercial establishment. The final hypothesis put forth by Plaintiff is that Defendant possessed an illegal "black box" which she used to decode the transmission. KingVision, in its response to DeMarco's motion to dismiss, asserts that "the Plaintiff is not required to plead the exact overt intentional act which the Defendant utilized to illegally broadcast the event in her commercial establishment, especially when the knowledge of how this fraud took place is particularly within the knowledge of the Defendant." Plaintiff's response to Defendant's motion to dismiss, p. 3, *citing Hirshfield v. Briskin*, 447 F.2d 694 (7th Cir.1971) and *PI, Inc. v. Ogle*, 932 F.Supp. 80 (S.D.N.Y.1996). Plaintiff's reliance on the Seventh Circuit's opinion in *Hirshfield* is somewhat mistaken. *Hirshfield* does not provide shelter from the particularized pleading requirement imposed by Rule 9(b), nor does it allow Plaintiff to survive this motion to dismiss. The Seventh Circuit, in *Hirshfield*, held that "at least where each of two alternative statements independently satisfies the particularity requirement of Rule 9(b), the pleading does not violate that rule solely because alternatives have been stated." *Hirshfield*, 447 F.2d at 697. Plaintiff must therefore still satisfy the particularized requirements for pleading fraud imposed under Fed.R.Civ.P. 9(b). Plaintiff has not alleged any communication or relationship between the parties to support allegations of a misrepresentation and some justifiable reliance thereon. The term "reliance" has often been defined as the "conjunction of a material misrepresentation with causation in fact." *In re Tomlinson*, 1999 WL 294879, at *7, *citing Mayer v. Spanel*, 51 F.3d 670, 676 (7th Cir.1995). It is without question that such is absent here. Plaintiff's theories involving some alleged mis-

representations to a local cable company or satellite provider seem to further support the proposition that there was no direct exchange between Plaintiff and Defendant, which should foreclose the possibility of any justifiable reliance by Plaintiff on Defendant's alleged misrepresentations. KingVision has failed to plead any facts which would entitle it to relief under § 523(a)(2)(A) and therefore, KingVision's claim under § 523(a)(2)(A) cannot survive a motion to dismiss.

**KINGVISION'S SECOND CLAIM FOR RELIEF—NON-DISCHARGEABILITY UNDER § 523(A)(6).**

██ DeMarco is also entitled to prevail on her motion to dismiss KingVision's complaint with respect to KingVision's claim under § 523(a)(6). KingVision must plead sufficient facts under § 523(a)(6). It has not done so. KingVision alleges, in its amended adversary complaint, that Defendant "willfully intercepted or received the interstate communication of the event and ... transmitted, divulged, published and exhibited said communication to the patrons, employees and agents at Spectators Sports Bar and Restaurant." KingVision's amended adversary complaint, p. 3. Plaintiff thereafter alleges, in conclusory fashion, that DeMarco "willfully and maliciously injured Plaintiff by exhibiting the Event without authorization from Plaintiff." KingVision's amended adversary complaint, p. 4. While making conclusory statements and employing the terms "willful" and "malicious," KingVision alleges few relevant facts in its pleadings other than that DeMarco was not authorized to receive the broadcast of the prize fight and that DeMarco did receive the broadcast of the fight. In order to entitle it to a determination of nondischargeability under § 523(a)(6), KingVision must plead and ultimately prove three elements: (1) that DeMarco's caused an injury; (2) that DeMarco's actions were willful; and (3) that the Debtor's actions were malicious. *A.V. Reilly International, Ltd. v. Michael Rosenzweig (In re Rosenzweig)*, 1999 WL

569446 *12 (Bankr.N.D.Ill.1999), *citing French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)* 224 B.R. 659, 663 (Bankr.N.D.Ill.1998).

The Supreme Court held, in *Kawaauhau v. Geiger,* that for a debt to be rendered nondischargeable under § 523(a)(6), a plaintiff must specifically plead and prove that the defendant has caused a deliberate or intentional injury to the plaintiff. *Kawaauhau,* 118 S.Ct. at 977. The Court states explicitly that "the word 'willful' in (a)(6) modifies the word 'injury' and that merely proving an intentional act is insufficient to warrant nondischargeability." *Id.* To survive a motion to dismiss, Plaintiff must therefore allege facts which demonstrate "acts done with the actual intent to cause injury." *Id.* at 975.

■ This court has construed the requirements set forth in Supreme Court's opinion in *Kawaauhau* strictly, requiring that Plaintiff "plead and prove" that Defendant's alleged act was committed "for the purpose of causing injury to the [plaintiff]." *In re Kraye,* 1998 WL 775654, *5, (Bankr.N.D.Ill.1998). In *Kraye,* the court dismissed an adversary complaint alleging nondischargeability under § 523(a)(6) for a debt arising when defendant retained pension benefit funds which were owed to the plaintiff for the services provided to defendant's father, the fund beneficiary, and the failure to dispense these funds did cause a financial injury to the plaintiff.

■ While, in many instances, an action perpetrated with the intent to procure financial gain will cause a resulting loss to another party, the fact that such a loss occurs, even if such a loss is within the knowledge of the defendant, has been insufficient to satisfy the stringent requirements for pleading and proving a willful and malicious injury under § 523(a)(6). The plaintiff in *Kraye* failed to allege that the financial injury was actually intended by Kraye, who likely sought to benefit himself by retaining the pension fund benefit payment and was likely indifferent to the losses incurred by the plaintiff. As a result, the plaintiff could not prevent discharge and this court granted Kraye's motion to dismiss the plaintiff's adversary complaint.

In *In re Tomlinson,* 1999 WL 294879, (Bankr.N.D.Ill.1999), the defendant encouraged the plaintiff to invest heavily with the defendant's securities investment company despite the fact that the defendant knew that the plaintiff was financially ill-suited to make such investments. To convince the plaintiff to invest and risk large sums of money, the defendant made several misstatements and omissions regarding both the degree of risk involved and the plaintiff's rights as an investor. In considering whether such actions constituted a willful and malicious injury under § 523(a)(6), this court held, after trial, "While Tomlinson acted intentionally, the Court cannot find that his purpose was to injure the Plaintiffs. He acted rather to help himself. His indifference to the possible effects of his actions upon the Plaintiffs was no more than reckless under § 523(a)(6)." *Id.* at *18.

■ KingVision has not pleaded any facts suggesting either that DeMarco acted with the intent to injure KingVision or its property, or even that DeMarco had knowledge that she would cause substantial injury to KingVision or its property. Further, the broadcast of the fight in a commercial establishment allows the court to draw the inference that the fight was broadcast by DeMarco as part of her commercial venture, and likely done so for the same reasons that KingVision endeavored to broadcast the fight—to entertain the establishment's patrons and to increase resulting business revenue. The fact that any loss to KingVision might occur does not appear, from the facts alleged, to have been a concern or consideration of DeMarco's, and KingVision has not alleged otherwise, nor has it suggested that DeMarco had any other motive. Therefore, any injury to KingVision which may have occurred would have resulted from DeMar-

co's recklessness toward KingVision, among others. As it has been held in *Kawaauhau* and *Tomlinson,* however, recklessness is insufficient to constitute a willful and malicious injury under § 523(a)(6).

█ KingVision, in its Response to Defendant's motion to dismiss, states that KingVision has adequately pled a cause of action for conversion in their amended adversary complaint as they have alleged that the Defendant was unauthorized in her display of KingVision's programming in her commercial establishment. Plaintiff's response, pp. 4–5. Had KingVision alleged sufficient facts to support a claim for conversion, it still does not mandate a finding of a willful and malicious injury under § 523(a)(6). The Supreme Court instructs that "a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances." *Davis v. Aetna Acceptance Company,* 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393. *See also Boyce v. Brockway,* 31 N.Y. 490, 493 (1865); *Laverty v. Snethen,* 68 N.Y. 522, 527, 23 Am. Rep. 184; *Wood v. Fisk,* 215 N.Y. 233, 239, 109 N.E. 177; *Stanley v. Gaylord,* 1 Cush.(Mass.) 536, 550, 55 Mass. 536, 48 Am.Dec. 643. The Supreme Court, in *Davis,* explained that § 523(a)(6) would not apply to "an unauthorized assumption of dominion without wilfulness or malice." *Id.* Thus, while willful and malicious injuries often result from intentional torts, the fact that an intentional tort, such as conversion, may have occurred may be insufficient, on its own, to constitute a willful and malicious injury entitling Plaintiff to a finding of nondischargeability under § 523(a)(6). *See Davis,* 293 U.S. at 332, 55 S.Ct. 151; *Corley v. Delaney (In re Delaney),* 97 F.3d 800 (5th Cir.1996); *Miller v. J.D. Abrams Incorporated (In the Matter of Miller),* 156 F.3d 598, 604 (5th Cir. 1998).

In *Miller v. J.D. Abrams Incorporated* and *Markovitz v. Campbell (In re Markovitz),* 190 F.3d 455 (6th Cir.1999), the Fifth and Sixth Circuits have enunciated a new test for § 523(a)(6) after *Kawaauhau.* We need not reach that question at this stage of the proceeding.

While the Court must, on a motion to dismiss, accept the truth of all well-pleaded allegations, KingVision, in its amended adversary complaint, does not allege any facts demonstrating that DeMarco in any way intended to cause injury to KingVision. Thus, under the requirements set forth in *Kawaauhau,* KingVision has failed to plead sufficient allegations to entitle it to go forward in seeking a determination of nondischargeability under § 523(a)(6).

KingVision's response to DeMarco's motion to dismiss illustrates a mistaken reliance on the definition of "willful and malicious" set forth in a Seventh Circuit case, *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994). While the case has not been entirely overruled, the definition of "willful and malicious injury" proffered in the case has been superseded by the definition set forth by the Supreme Court in *Kawaauhau.* Count II of the amended complaint, brought under § 523(a)(6) is stricken for failure to state a claim for which relief may be granted.

### GRANTING OF ATTORNEY'S FEES AS SANCTIONS UNDER FED.R.CIV.P. 9011.

█ Finally, addressing the Defendant's petition for the payment of attorney's fees, the court will extrapolate from DeMarco's pleadings that the request for fees is rooted in Fed. R. Bankr.P. 9011. Rule 9011 incorporates Fed.R.Civ.P. 11 into bankruptcy proceedings and allows for sanctions for the submission of pleadings and documents which are not well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, or which is interposed for any improper purpose, such as to "harass, or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case." Fed. R. Bankr.P. 9011(a). The court denies the prayer for sanctions with-

out prejudice to the movant to resubmit the motion at a later date.

## CONCLUSION

Plaintiff has failed to plead sufficient facts in its Amended Adversary Complaint to allow a complaint to determine nondischargeability to proceed under either § 523(a)(2)(a) or § 523(a)(6). There are no facts under which Plaintiff could support a claim under § 523(a)(2)(a). That claim for relief will be dismissed with prejudice. There is potential for curing the defects under Plaintiff's second claim for relief. The second claim for relief will be stricken with leave to file a second amended adversary complaint as to § 523(a)(6) only.